NOT FOR PUBLICATION OR CITATION
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
ASHLAND

CIVIL ACTION NO. 06-CV-19-HRW

CHARLES EDWARD JOHNSON, III                                          PETITIONER

VS:            **MEMORANDUM OPINION AND ORDER**

BRIAN PATTON, *Warden*                                               RESPONDENT

Charles Edward Johnson, who is confined in the Federal Correctional Institution in Ashland, Kentucky ("FCI-Ashland"), has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. §2241. He has paid the $5.00 filing fee.

This matter is before the Court for screening. 28 U.S.C. §2243; *Demjanjuk v. Petrovsky*, 612 F. Supp. 571 (N.D. Ohio 1985) (citing *Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970), *cert. denied*, 400 U.S. 906 (1970); *accord Aubut v. State of Maine*, 431 F.2d 688, 689 (1st Cir. 1970)).

*Pro se* petitions are held to less stringent standards than those drafted by attorneys. *See Cruz v. Beto*, 405 U.S. 319 (1972); *Haines v. Kerner*, 404 U.S. 519 (1972). The allegations in a *pro se* petition must be taken as true and construed in favor of the petitioner. *See Malone v. Colyer*, 710 F.2d 258, 260 (6th Cir. 1983). However, under 28 U.S.C. §1915(e)(2), the district court can dismiss a case at any time if it determines the action: (I) is frivolous or malicious, or (ii) fails to state a claim upon which relief can be granted.

RESPONDENT

The named respondent is Brian Patton, the warden of FCI-Ashland.

## CLAIMS

The petitioner alleges that his due process rights, under the Fifth Amendment of the United States Constitution, were violated when the Bureau of Prisons ("BOP") revoked 40 days of Good Time Credit ("GTC") from his federal sentence. He alleges that the BOP disregarded relevant provisions of 28 C.F.R. § 541 *et seq*, the regulations governing inmate disciplinary proceedings.

## ALLEGATIONS OF THE PETITION
### 1. Disciplinary Charges and Conviction

On April 26, 2005, the petitioner was serving his federal sentence at the Federal Correctional Institution in Morgantown, West Virginia. On that date, the BOP's Special Investigations Section ("SIS") conducted a mass shakedown of "Byrd Unit" in which the petitioner was housed. During the search, the SIS recovered a cell phone found in the hole in the bathroom wall. An Incident Report was filed in which the petitioner was charged with violating two BOP Code offenses.[1] The Petitioner did not attach the Incident Report to his submission. The first charged offense was a violation of Code 108 (possession, manufacture,

---

[1] The various levels of Bureau of Prisons ("BOP") offenses are listed in 28 C. F. R. §541.13, Table 3. The most serious offenses ("Greatest Category") are listed in Code Nos.100-199; the next level of offenses ("High Category") are listed in Code Nos. 200- 299; the next level of offenses ("Moderate Category") are listed in Code Nos. 300-399; and the final and lowest level of offenses ("Low Moderate Category") are listed in Code Nos. 400-499.

2

or introduction of a hazardous tool[2]) and the second charges offense was (2) Code 197 (use of the telephone to further criminal activity). According to the petitioner, seven other inmates were charged with constructive possession of the cell phone.

A disciplinary hearing was conducted on May 24, 2005. The Disciplinary Hearing Officer ("DHO") determined that the petitioner had violated both Code 108 (possessing a hazardous tool) and Code 197 (Use of the telephone to further criminal activity).

The Amended DHO Report sets forth several facts upon which the DHO based the Code 108 disciplinary conviction.[3] The BOP researched the phone numbers stored in the call log/memory section of the recovered cell phone by entering them in the BOP's Inmate Telephone System ("ITS"). The BOP discovered that the Petitioner Johnson's name matched one of the phone numbers (410-462-3887) stored in the recovered cell phone. The BOP determined that the telephone number belongs to a "Clifton's Deli" and that the number was also listed as a number in the petitioner's ITS account. According to the BOP, the petitioner was the only inmate at FCI-Morgantown who could be identified with that particular phone number.

The DHO cited a passage from the Incident Report which stated that possessing and

---

[2] The regulation further defines a Code 108 offense as: "(Tools most likely to be used in an escape attempt or to serve as weapons capable of doing serious bodily harm to others; or those hazardous to institutional security or personal safety; e.g., hack- saw blade.").

[3] As the Court will discuss *infra*, although the DHO issued an original report finding the petitioner guilty of violations of both Code 108 and 197, he subsequently amended that report on August 22, 2005 to reflect a violation of only Code 108. The amendment appears to have been prompted by the petitioner's filing of an administrative appeal.

3

introducing a cell phone into a federal correctional facility circumvents the ITS. Circumvention of the ITS system enables an inmate to further criminal activity or plan an escape without being monitored. Thus, the BOP considers cell phones in the hands of inmates a security hazard

In his findings and conclusions, the DHO determined that it was more than merely coincidental that the 410-462-3887 telephone number was listed on the petitioner's ITS account *and* that it was called from the cell phone recovered from a hole in the wall of the petitioner's housing unit. The DHO concluded that the petitioner maintained close contacts with the operators or patrons of the Clifton Deli. He noted that while the petitioner had argued at the hearing that other inmates were familiar with the Clifton Deli, the petitioner did not call any of those inmates as witnesses to testify as to that fact at the hearing. The DHO stated that in order for the petitioner to have called the Clifton Deli using the recovered cell phone, he would have had to have possession of the cell phone. Although the petitioner testified at his hearing that he had not used the recovered cell phone, the DHO discounted that statement, describing it as "unsupported." [Amended DHO Report, § V]. The DHO determined that because the petitioner was the only inmate at FCI-Morgantown who had the Clifton Deli's phone number listed on his ITS account and because the petitioner was so familiar with the establishment, the greater weight of the evidence warranted a finding that the petitioner had possessed a hazardous tool in violation of Code 108.

2. <u>Administrative Appeals</u>
A. <u>Mid-Atlantic Regional Office Appeal (BP-10 Appeal)</u>

On June 28, 2005, the petitioner filed a BP-10 administrative appeal to the BOP's Mid-Atlantic Regional Office ("MARO). The petitioner advanced two arguments before the MARO.

First, he stated that the DHO had improperly denied his request to receive a copy of the cell phone bill showing the numbers called. The petitioner states that the DHO denied that request because no criminal laws had been broken by calling the number on the recovered cell phone. Petitioner contends that if he did violate any *criminal* laws, he should not have been charged with and convicted of a Code 197 offense (use of the telephone to further criminal activity).

In fact, the petitioner admitted in his BP-10 appeal that he had called the Clifton Deli. He stated as follows: "Where's the criminal activity? The owner [of the Clifton Deli] was a popular ex-inmate at Morgantown. I called one time for 4 minutes to thank him for pictures."

Second, the petitioner continued to dispute the BOP's contention that he (petitioner) was the only inmate at FCI-Morgantown who listed the Clifton Deli's phone number (410-468-3887) on his ITS phone account. Petitioner stated hat "Inmate 34675-037," whom the petitioner did not identify by name, placed the Clifton Deli's phone number on his ITS phone account on December 21, 2004. Petitioner stated that the phone number remained on that inmate's account as of June 28, 2005.

Presumably as result of the petitioner's first argument regarding lack of factual foundation for a Code 197 violation, the DHO amended his Report, and the Code 197 conviction, on August 22, 1005. The DHO's Amended Report reflects that the petitioner was guilty only of only the Code 108 Offense.[4] According to the petitioner, the sanction imposed in both the original DHO Report and the *Amended* DHO Report were the same: (1) loss of 40 days of GTC; (2) 15 days in disciplinary segregation (suspended pending 180 days of clear conduct); (3) 12 months of telephone restriction; (4) 90 days of restricted social visiting; and (5) a recommended disciplinary transfer.[5]

On August 25, 2005, K. M. White, the Regional Director of the MARO responded to the petitioner's BP-10 appeal. He affirmed the DHO's Amended Report, stating that there was "some evidence" to support the amended findings, and that the petitioner's disciplinary record had been modified to reflect the amendment. White concluded that: (1) the DHO's findings were based on the greater weight of the evidence, which he identified as being the reporting officer's statement, and (2) the requisite disciplinary and due process procedures had been substantially followed.

### B. Central Office Appeal (BP-11 Appeal)

On September 13, 2005 the petitioner appealed White's decision to the BOP's Central Office. As the Court has noted, by this time, the DHO had amended his Report to find to

---

[4] The petitioner did not provide the Court with a copy of the DHO's original report, only the DHO's Amended Report dated August 22, 2005.

[5] The petitioner was ultimately transferred to FCI-Ashland.

violation of the Code 197 charge and had amended the petitioner's BOP disciplinary record. Although he had argued in his BP-10 appeal that the Code 197 should have been dismissed, and although the DHO apparently agreed with that claim and did in fact delete the Code 197 conviction from the petitioner's record, the petitioner argued that the DHO erred in amending the conviction and the Report to reflect only a Code 108 conviction.

In his BP-11 appeal, however, the petitioner argued only that because there were other FCI-Morgantown inmates who had connections to the Clifton Deli, the DHO mistakenly concluded that he (petitioner) was the only inmate connected to the Clifton Deli. Petitioner argued that the DHO acted in error by placing too much emphasis on the fact that the Clifton Deli's phone number appeared on both the petitioner's ITS account and on the call log from the recovered cell phone. Petitioner agin referred to unnamed FCI-Morgantown "Inmate 34675-037" as the likely caller of the Clifton Deli and user of the recovered cell phone. He stated that if he (petitioner) had been using a cell phone to call the Clifton Deli, he would not have listed the number on his ITS account.

On December 6, 2005, Harrell Watts, the Administrator of Inmate Appeals issued a written denial of the BP-11 appeal and affirmed the MARO. Watts stated that upon review of the record, the BOP had substantially complied with PS 5270.07, *Inmate Discipline and Special Housing Units*, which requires that if the facts are contradictory or conflicting, that the DHO's decision be based upon the greater weight of the evidence. Watts determined that the BOP's amendment of the charge and deletion of the Code 197 conviction was

appropriate and was based on the greater weight of the evidence. Watts further determined that the BOP had substantially complied with the requisite disciplinary procedures, and that the proper sanctions had been imposed had been followed and that there was evidence in the record to support the DHO's findings.

## RELIEF REQUESTED

The petitioner seeks the reinstatement of the 40 days of good time credit which he was ordered to forfeit as result of the Amended DHO Report.

## DISCUSSION
### 1. Proper Forum

Claims which challenge the execution of sentence, such as issues concerning the computation of parole or sentence credits, are properly raised under §2241 in the district where the petitioner is incarcerated. *See Bradshaw v. Story*, 86 F.3d 164, 166 (10th Cir. 1996); *United States v. Jalili*, 925 F.2d 889, 893 (6th Cir.1991); *DeSimone v. Lacy*, 805 F.2d 321, 323 (8th Cir. 986) (per curiam); *Cohen v. United States*, 593 F.2d 766, 770-71 (6th Cir. 1979); (per curiam); *Wright v. United States Bd. of Parole*, 557 F.2d 74, 77 (6th Cir.1977). As the petitioner is currently incarcerated in the Eastern District of Kentucky, the petitioner has filed his petition in the proper court.

### 2. Due Process Criteria for Conviction was Satisfied

In essence, the petitioner challenges the sufficiency of the evidence upon which he

was convicted in the disciplinary hearing. After being successful in having the Code 197 charge against him set aside, his sole attack is on the sufficiency of the evidence upon which the DHO relied in convicting him of the Code 108 offense (possessing a hazardous tool). Specifically, the petitioner argues that because other inmates either were in contact with, or might have been in contact with the Clifton Deli, he should not have been singled out for disciplinary action. Petitioner disagrees with the DHO's interpretation of the fact that because he (petitioner) had maintained contact with the Clifton Deli, he had possessed the cell phone, called the number, and violated Code 108.

Unfortunately for the petitioner, the law is clear that a DHO need not accept what the inmate perceives to be the "best" or most convincing or persuasive set of facts: according to *Superintendent, Mass. Correctional Inst., Walpole v. Hill*, 472 U.S. 445, 455-56 (1985), there need only be "some evidence" to support the disciplinary decision. This standard is satisfied where "there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id*.

In *Superintendent v. Hill*, the Supreme Court held that:

[a]ssuming that good time credits constitute a protected liberty interest, the revocation of such credits must be supported by some evidence in order to satisfy the minimum requirements of procedural due process . . . . [a]scertaining whether the 'some evidence' standard is satisfied does not require examination of the entire record, independent assessment of witnesses' credibility, or weighing of the evidence, but, instead, the relevant question is whether there is any evidence in the record to support the disciplinary board's conclusion.

9

*Id.* at 454-55.

Therefore, a district court has no authority under the guise of due process to review a disciplinary committee's resolution of factual disputes. *Id*. at 455. A review of a decision of a prison disciplinary board does not involve a redetermination of an inmate's innocence or guilt. A district court merely ensures that a disciplinary decision is not arbitrary and does have evidentiary support. *Id.* at 457. The only question is whether the DHO had "some evidence" to ensure fairness and justify his amended findings.

To the extent the petitioner is asserting that the testimony the DHO relied upon lacked credibility, independent assessment of witnesses' credibility by a district court is not required. *Id*. at 455. Federal courts do not assess credibility or weigh the evidence when reviewing a disciplinary conviction. A DHO's credibility determinations cannot be disturbed on appeal. *Wagner v. Seely, et al.*, 915 F.2d 1575 (7th Cir. 1990) (unpublished), *cert. denied*, 501 U.S. 1219 (1991).

In the instant proceeding, there was more than "some evidence" that the petitioner possessed
a hazardous tool (cell phone) in violation of Code 108. Here, the Clifton Deli's number was dialed from a cell phone hidden in a hole in the wall of the petitioner's housing unit. The Clifton Deli's phone number is listed on the petitioner's official ITS account with the BOP. The petitioner admitted in his June 28, 2005 BP-10 appeal that he had, in fact, called the Clifton Deli and further questioned the MARO in that appeal as to why and how a four-

minute phone conversation could be considered criminal activity. In that appeal, the petitioner clearly admitted to having contacted the Clifton Deli for a four-minute phone conversation using some phone--either by way of a BOP- authorized phone or an unauthorized cell phone.

While these facts are not one hundred percent conclusive of whether the petitioner violated Code 108, they are adequate facts upon which to base a prison disciplinary conviction. They constitute "some" facts upon which the DHO was entitled to rely in finding the petitioner guilty of violating Code No. 108. Although the petitioner argues that another, unnamed FCI-Morgantown inmate listed the Clifton Deli's phone number on his ITS account, the DHO was not required to accept the petitioner's claim that the other, unnamed inmate possessed the recovered cell phone.[6] Moreover, as the DHO noted in his Amended Report, the petitioner had the opportunity to call this unnamed inmate as a witness at his hearing to testify about having contact with the Clifton Deli, but the petitioner did not do so. In fact, the petitioner did not even raise that factual allegation until after the hearing, when he filed his BP-10 appeal on June 28, 2005.

### 3. Amendment of Charge Did Not Violate Fifth Amendment

To the extent that the petitioner may be complaining about the DHO amending the

---

[6] *See Sarmiento v. Hemingway*, 93 Fed. Appx. 65, 68 (6th Cir. (Mich) March 15, 2004) (not selected for publication in the Federal Reporter) (where the facts were in dispute and the DHO determined that the greater weight of the evidence supported the finding that inmate Sarmineto committed the prohibited act of "tampering with a security device" under Code No. 208, the Sixth Circuit affirmed the district court's ruling that the DHO's decision was supported by some evidence, and that Sarmiento's constitutional rights were not violated).

charges against him after he (petitioner) had begun the BOP administrative exhaustion process, that claim also fails. In his BP-10 appeal, the petitioner argued that there was no basis for charging him with a violation of a Code 197 offense. It appears that the BOP must have found the argument to have some merit, because the BOP did exactly what the petitioner requested: amended the charge and conviction to reflect *no* violation of a Code 197 offense, only a conviction under Code 108.

To the extent that the petitioner may be complaining about the DHO amending the charges against him after he (petitioner) had begun the BOP administrative exhaustion process, that claim also fails. As the petitioner was originally charged with the Code 108 offense, with the Code 197 offense, he was clearly on notice of the Code 108 charge of which he was ultimately convicted.

Under 28 C. F. R. §541.18, the DHO has available a broad range of sanctions and dispositions following completion of the hearing, including but not limited to dismissing any charge(s) upon a finding that the inmate did not commit the prohibited act(s). 28 C. F. R. §541.18(a). If the DHO does this, he is required to order the record of charge(s) expunged upon such finding. *Id*. This is exactly what occurred in the instant proceeding, when the DHO dismissed the Code 197 charge, amended his Report, and expunged the petitioner's record of the Code 197 charge.

As K. M. White noted in the denial of the petitioner's BP-10 appeal, the BOP may approve, modify, reverse, or send back with directions any disciplinary action of the DHO.

Here, the MARO and the Central Office approved the amendment of the charges to reflect only a Code 108 violation.

In *Castellanos v. Snyder*, 230 F.3d 1357, 2000 WL 1434590, **1 (6th Cir.(Ky.)) (Unpublished Disposition), prisoner Castellano was charged with and convicted of "attempting to escape." During the administrative appeal process, the BOP amended the conviction to reflect only a violation of "aiding" an attempt to escape. Castellano argued that "aiding" an attempt to escape was not a valid charge.

The Sixth Circuit disagreed and held that the charging document was sufficient because it contained the elements of the "aiding" offense charged and fairly informed Castellanos of the charge against which he had to defend. *Castellanos v. Snyder*, 2000 WL 1434590, **1. *See also Yates v. Young*, 772 F.2d 909, 1985 WL 13614, **1 (6th Cir.(Tenn.) August 28, 1985) (Unpublished Disposition) ("Although the stated charge was possession of a sharpened instrument, plaintiff was notified that the charge was based on the discovery of this weapon in his cell. Attempting an offense is considered to be the same as commission of the offense itself. *See* 28 C.F.R. §541.13(b).").

In sum, the Court determines that because the petitioner's disciplinary conviction was supported by "some" evidence as required by *Superintendent v. Hill*, his Fifth Amendment due process rights were not violated. The petition will be dismissed.

## CONCLUSION

Accordingly, **IT IS ORDERED** as follows:

(1) Petitioner Charles Edward Johnson's petition for writ of habeas corpus is **DENIED**.

(2) This action will be **DISMISSED**, *sua sponte,* from the docket of the Court, and Judgment shall be entered contemporaneously with this Memorandum Opinion and Order in favor of the Respondent.

This April 11, 2006.

Signed By:
*Henry R Wilhoit Jr.*
United States District Judge